IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ANGEL G. QUEZADA, )
)
     Plaintiff, )
)
vs. ) Case No. 10-CV-493-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
     Defendant. )

## OPINION AND ORDER

Plaintiff Angel Quezada seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §416(i) & 423, and Supplemental Security Income under Title XVI, 42 U.S.C. § 1382c(a)(3). The Administrative Law Judge ("ALJ") denied plaintiff's applications for benefits at step-one of the five-step sequential evaluation process for determinating disability, finding that plaintiff had engaged in substantial gainful activity ("SGA") following his alleged onset date of April 28, 2008.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[2] [Dkt. # 8].

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52.)

[2] Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially, and upon reconsideration. A hearing before ALJ David Engel was held on January 22, 2010. [R. 22]. By decision dated February 22, 2010, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review on June 4, 2010. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for

**Introduction**

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

At step-one, the claimant has the burden of showing he was not performing substantial gainful activity. See 20 C.F.R. § 404.1571 and § 416.971.

**Background**

Plaintiff was born on October 1, 1962. He was 47 years old on the date of the hearing before the ALJ. [R. 98, 22]. Plaintiff has a high school education and an Associate Degree in Health Sciences. [Dkt. # 15 at 1]. He has worked as a respiratory therapist for 24 years. [R. 223]. He is married to his second wife. [R. 104]. Plaintiff was diagnosed with ankylosing spondylitis in 2001, and has been treated for that condition since 2004.[3] [R. 202, 223]. Plaintiff was admitted to St John Medical Center ("St. John") on May 8, 2008, complaining of right leg pain. [R. 153]. He received

---

purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On July 30, 2010, plaintiff timely filed his appeal to this Court. [Dkt. # 2].

[3] Ankylosing spondylitis is a form of arthritis, characterized by inflammation of the vertebrae and surrounding structures causing stiffness of the spine. See Schmidt's Attorneys Dictionary of Medicine at A-379 (2010 ed.).

in-patient treatment at St John from May 8, 2008 to May 23, 2008. [R. 152-156]. Plaintiff has a history of recurrent episodes of cellulitis in the right lower extremity which is normally controlled with oral Bactrim. [R. 153].[4] At St. John, plaintiff was diagnosed with extensive right lower extremity erysipelosis, erysipelas cellulitis with Strep bacteremia.[5] [R. 156]. Plaintiff testified that after discharge from St. John he went through a 6-month recovery period. He returned to part-time work in his capacity as a respiratory therapist in November 2008, and continued working part-time until mid-April 2009. [R. 30]. On May 1, 2009, plaintiff was admitted to St. John with an abscess on his left hand. [R. 242]. He was immunosuppressed and on anti-inflammatory medication for ankylosing spondylitis. [R. 242].[6] Plaintiff had first noticed a small lesion on his left fourth finger five days prior to his hospital admission. [R. 242]. Plaintiff received in-patient treatment from May 1, 2009 to May 6, 2009. [R. 240]. During his hospitalization, plaintiff underwent an incision, drainage and debridement of is left ring finger and hand. [R. 246].[7] Plaintiff returned part-time to his regular work as a respiratory therapist in mid-June 2009, working two to three days per week. [R. 29]. By January 22, 2010, the date of the hearing before the ALJ, plaintiff was working 26 to

---

[4] Cellulitis is an inflammation of the "soft supporting tissue," especially the connective tissue under the skin. "Soft supporting tissue" is distinguished from "hard supporting tissue" such as bone, and other tissue which makes up the functional part of an organ or a gland. See Attorneys Dictionary of Medicine at C-138.

[5] Erysipelas is an acute inflammation of the skin and the underlying tissue, caused usually by infection with hemolytic streptococci [release of hemoglobin from the red blood cells]. It spreads rapidly to adjacent parts of the skin and usually involves the face, trunk or limbs. See Attorneys Dictionary of Medicine at E-182, H-79.

[6] Immunosuppress is a suppressed or weakened immunity mechanism (i.e. the system which fights off infection in the body). See Attorneys Dictionary of Medicine at I-45.

[7] Debridement is the process of removing all dead tissue and contaminating material in treating a wound. See Attorneys Dictionary of Medicine at D-19.

36 hours per week. [R. 28]. Plaintiff testified that he is paid daily, earning an average salary between $300 to $400 per day, which is approximately $900 per week, or approximately $3,000 per month. [R. 28]. In 2008, plaintiff recorded a annual earnings of $43,203.09. [R. 107].[8]

On June 9, 2008, plaintiff filed his application for disability insurance benefits and supplemental security income. [R. 98, 103]. Plaintiff alleged a disability onset date of April 28, 2008. At the hearing, plaintiff amended his request for disability insurance to a closed period from April 28, 2008 to July of 2009. [R. 27]. In his application documents, plaintiff alleged he is limited in his ability to work because of ankylosing spondylitis and Methicillin-resistant Staphylococcus Aureas (MRSA).[9] [R. 115, Dkt. # 15 at 1-2].

In his written decision, the ALJ found that plaintiff is a respiratory therapist at a hospital, he was diagnosed with MRSA in April 2008, hospitalized for 20 days in May 2008, spent 6 months recovering, returned to part-time work as a respiratory therapist (with accommodations by his employer), diagnosed with cellulitis in his left hand in May 2009, remained off work for eight weeks, returned to part-work (with accommodations) and currently worked 26 to 36 hours per week. [R. 17]. The ALJ found that plaintiff is paid on a daily bases, which amounts to $300 to $400 per day average, or approximately $900 per week. [R. 17]. The ALJ determined that plaintiff's average monthly earnings established that he had engaged in SGA because his earnings exceeded the set

---

[8] In 2006, plaintiff's annual income was $64,764.86; and in 2007, plaintiff's annual income was $58,413.60. Plaintiff's 2008 annual income of $43,203.09, reflects the earnings reduction resulting from part-time employment. [R. 107].

[9] MRSA infection is caused by a strain of staph bacteria that has become resistant to the antibiotics commonly used to treat ordinary staph infections. Most MRSA infections occur in people who have been in hospitals or other health care settings. See www.mayoclinic.com/health/mrsa

4

amount for calendar years 2008 and 2009 as calculated under the policies of the Social Security Administration.[10] The ALJ determined for 2008, the regulatory established SGA amount was $980 per month. The ALJ concluded his analysis under step-one by finding that plaintiff has earned SGA since he returned to work in November 2008, there was no continuous 12-month period during which plaintiff was not engaged in SGA, and the duration of plaintiff's alleged impairments have not been "severe" as defined under 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010). Thus, the ALJ found that plaintiff has not been under a disability as defined under the SSA. [R. 17].

## Discussion

Plaintiff raises two arguments on appeal. First, plaintiff contends the ALJ erred by determining that plaintiff had achieved SGA during a 12-month continuous period of time, by contending that plaintiff's attempt to return to work between his two hospitalizations qualified as an unsuccessful work attempt. Second, plaintiff contends the ALJ failed to develop the record because there was no documentary evidence of plaintiff's actual earnings for 2009.

The ALJ found that plaintiff had engaged in SGA since November 30, 2008, a date subsequent to the onset of plaintiff's alleged disability by primarily finding that he had earnings greater than SGA, and he failed to show an inability to work for 12 continuous months. Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if the claimant does less work, gets paid less or has less responsibility than when he worked before. Id. Work activity is "gainful" if it is the kind of work usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. §§ 1572(b), 416.972(b). As a general rule, work that has been

---

[10] See 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2).

done during the relevant adjudicated period of disability may show that the claimant is able to work at SGA. If a claimant is able to work at SGA level, the Commissioner will find that the claimant is not disabled. 20 C.F.R. §§ 404.1571, 416.971. A claimant engaged in SGA will not be found disabled no matter how severe his impairment. Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

To qualify as an unsuccessful work attempt, plaintiff must establish that he had a "significant break in the continuity" of his work to establish that his attempt to return to work was unsuccessful. 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2). To qualify as a "significant break in continuity" of work, plaintiff must show he discontinued work during the relevant time period for at least 30 consecutive days. Plaintiff testified that he tried to go back to work in November 2008, after his "leg incident" because he "was losing everything at home" and he worked until the following April. However, he also testified that he was off work for at least 30 consecutive days. [R. 28]. This is shown by the following colloquy between the ALJ and the plaintiff:

> ALJ: Okay. But that apparently didn't work out. How long had you, did you go back [to work] in '08 and then you found out you couldn't do it?
>
> Plft: I went back to work for roughly two and a half months, sir, and I caught another infection in my hand, which put me off work again for – from May or end of April until July [2009] roughly. They did surgery and they cut my hand from the ring finger all the way across to the top of the palm.
>
> ALJ: I'm reading this and April to November [2008] you're out of work completely. It looks like there's some part-time work from November [2008] too what, January or February [2009]?
>
> Pltf: Yes, ma'am – yes, sir.
>
> ALJ: Okay. And between January and in May [2009] with this hand infection were you then working then or not working?

| | | |
|---|---|---|
| Plft. | | I was working until I got the infection and then I was hospitalized and taken off work again. |
| ALJ: | | Okay. I'm looking at November [2008] to May [2009] sounds like more than two and a half months. |
| Plft: | | It was November [2008], end of November, December, then I went back to work in January, February, roughly three months I was working. And it was right at the end, beginning, middle April [2009] I caught this staph infection in my hand. We tried antibiotics and everything. I worked for about another week until I, they hospitalized me and – |
| ALJ: | | All right. So April to November and November to April I guess was -- |
| Plft: | | April roughly. |
| ALJ: | | — work. That comes to be more like six months but I'm not sure. Keeping total two and a half and three months, I come up with six. |

[R. 29-30]. Plaintiff contends that the ALJ had a duty to develop the record and determine the exact dates that he worked in 2008 and 2009, and the amount of his recorded earnings in 2009. To meet his burden of proof, plaintiff relies on the fact that he has shown that he had "discontinued" his work for at least 30 days, which raised the issue before the ALJ of an unsuccessful work attempt.

Setting aside the fact that plaintiff carries the burden of showing he was not performing substantial gainful activity (20 C.F.R. §§ 404.1571, 416.971), plaintiff's vague testimony of his apparently greater than six months of continuous return to part-time work, appears to negate his claim of an unsuccessful work attempt. However, the ALJ did not enter findings on this point, but cut his decision short by finding that plaintiff had SGA after the onset of his disability. Under the regulations, if a claimant works for more than six months, such work can never be considered an unsuccessful work attempt. See 20 C.F.R. §§ 404.1574(c)(5), 416.974(c)(5). If a claimant works between three and six months, the work must have ended or been reduced to non-substantial gainful

7

levels within six months due to his impairments or the removal of special conditions and, there must be evidence that claimant:

> (i) Was frequently absent from work because of his impairment;
>
> (ii) Was shown to have unsatisfactory work because of his impairment;
>
> (iii) Worked during a period of temporary remission of his impairment; or
>
> (iv) Worked under special conditions that were essential to his performance and these conditions were removed.

See 20 C.F.R. §§ 404.1574(c)(4), 416.974(c)(4). Plaintiff contends that his return to work from November 2008 until May 2009 was during a temporary remission of his illness. This is a factual determination for the ALJ. Because the ALJ did not enter specific findings as to plaintiff's claim of work during a "temporary remission" of his illness, the Court concludes that this case should be remanded for the limited purpose of the ALJ supplementing his written decision to enter his findings and conclusions as to this claim. Although there appears to be more than sufficient evidence of record for the ALJ to determine this issue without an additional evidentiary hearing, the ALJ may find it helpful to obtain copies of plaintiff's earning records, time sheets during the relevant closed period of alleged disability, and an expert medical opinion as to whether plaintiff experienced a "temporary remission of his illness in may 2008." Doing so would render moot plaintiff's second claim that the ALJ failed to develop the record as to his 2009 annual earnings. However, if the ALJ were to determine that plaintiff worked in excess of six months between his two hospitalizations, all other factual determination would be rendered moot.

## Conclusion

Upon a *de novo* examination of the record, it is hereby ORDERED, ADJUDGED AND

DECREED that this case is REVERSED and REMANDED to the Commissioner for further administrative action pursuant to sentence four (4) of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Melkonyan v. Sullivan, 501 U.S. 89 (1991).

Upon remand, the Commissioner will supplement his written decision by entering his findings and conclusion as to plaintiff's claim of unsuccessful work attempt under 20 C.F.R. §§ 404.1574(c), 416.974(c)(2). Notwithstanding the Court's remand, it appears that the Commissioner's position on appeal was substantially justified.

SO ORDERED this 22nd day of July, 2011.

_____
T. Lane Wilson
United States Magistrate Judge